Steven L. Evans (AZ State Bar No. 012998)
steven.evans@azbar.org

STEVEN L. EVANS, PLC
322 W. Roosevelt Street
Phoenix, AZ  85003-1325
Telephone:  602-288-3325
Facsimile:   602-288-3328

Ronald P. Oines (CA State Bar No. 145016) (*pro hac vice pending*)
roines@rutan.com

Dan E. Chambers (CA State Bar No. 156853) (*pro hac vice pending*)
dchambers@rutan.com

Alejandro S. Angulo (CA State Bar No. 217823) (*pro hac vice pending*)
aangulo@rutan.com

RUTAN & TUCKER, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931
Telephone:  714-641-5100
Facsimile:   714-546-9035

Attorneys for Plaintiff QUICKIE TIE-DOWN
ENTERPRISES, INC., a Texas corporation

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| QUICKIE TIE-DOWN ENTERPRISES, INC., a Texas corporation,<br><br>            Plaintiffs,<br><br>    vs.<br><br>CAROLINA NORTH MANUFACTURING, INC., a North Carolina corporation; KENT SOUTHARD, an individual; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1.  **UNFAIR COMPETITION (15 U.S.C. § 1125(a));**<br>2.  **FALSE ADVERTISING (15 U.S.C. § 1125(a));**<br>3.  **TRADE LIBEL;**<br>4.  **DEFAMATION;**<br>5.  **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>6.  **INDUCING BREACH OF CONTRACT;**<br>7.  **COMMON LAW UNFAIR COMPETITION; and**<br>8.  **ABUSE OF PROCESS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff QUICKIE TIE-DOWN ENTERPRISES, INC. ("QTD"), for its

Complaint against Defendants CAROLINA NORTH MANUFACTURING, INC.

("CNM") and KENT SOUTHARD ("Southard") and DOES 1 through 50, inclusive

(collectively "Defendants"), alleges as follows:

## INTRODUCTION

1.      This action arises out of Defendants' despicable "win at all costs"

attitude that reflects an unfortunate and all too common example of bullying

business tactics, including the use of false information, deception,

misrepresentations and concerted efforts to unlawfully interfere with QTD's

customers and relationships.  In fact, Defendants' efforts to destroy QTD have been

ongoing for nearly a decade, stretching back to 1996, when Defendants first raised

frivolous issues of "patent infringement" against QTD.

2.      Despite their best efforts, Defendants have been unable to shut down

QTD.  While QTD has, for the most part, been willing to ignore Defendants'

malicious conduct and fight it out in the marketplace, Defendants' latest antics have

served as the last straw.  Through this action, QTD seeks to recover the damage it

has suffered as a result of Defendants' most recent efforts to topple QTD.

Defendants' efforts have undoubtedly been born out of their frustration at not being

able to drive QTD out of business.

. . .

## JURISDICTION AND VENUE

3.      This is a civil action that arises in part under the Lanham Act (Trademark Act of 1946 as amended), 15 U.S.C. §§1051 *et seq*., for unfair competition and false advertising, and under the laws of the State of Arizona.

4.      Jurisdiction over this matter is conferred on the Court by 28 U.S.C. §§ 1331, 1332, 1338, and 15 U.S.C. §1121.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims not brought under a federal statute because those claims are related to, and form part of the same case or controversy as, the federal question claims.

5.      The Court has personal jurisdiction over Defendants by virtue of their presence in this judicial district, and because, among other things, the activities complained of herein have occurred and are occurring in part in this judicial district and Defendants conduct business in this judicial district.

6.      In addition, all Defendants are subject to the personal jurisdiction of this Court because, among other things, a substantial part of the events giving rise to this action occurred in the State of Arizona.

7.      In addition, all Defendants are subject to the personal jurisdiction of this Court because, among other things, QTD is informed and believes and based thereon alleges, that Defendants are subject to Arizona's long-arm statute.

8.      In addition, Defendants are subject to the personal jurisdiction of this Court because, among other things, QTD is informed and believes and based

thereon alleges, that Defendants have transacted and are presently transacting business in the State of Arizona by:  (a) providing Internet users in Arizona access to Defendants' web sites; (b) contracting with, or attempting to contract with, Arizona residents for the sale of goods and services, including the goods described herein, on its Internet web sites; (c) selling or attempting to sell goods and services to residents of the State of Arizona; and (d) committing the tortious or otherwise wrongful acts alleged herein in the State of Arizona.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because QTD resides in this district, a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district and the Defendants are subject to personal jurisdiction and may be found in this district.

## THE PARTIES

10.     QTD is a corporation duly organized and existing under the laws of the State of Texas, with its principal place of business located in Mesa, Arizona, at 663 W. 2nd Avenue, #19.

11.     QTD is informed and believes and based thereon alleges, that CNM is a corporation duly organized and existing under the laws of the State of North Carolina, with its principal place of business located in Kernersville, North Carolina at 1325 South Park Drive.

12.     QTD is informed and believes and based thereon alleges, that Southard is an individual residing in the State of North Carolina.

13.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 50, inclusive, are unknown to QTD, which therefore sues said defendants by such fictitious names.  QTD will seek leave of this Court to amend this Complaint to include their proper names and capacities when they have been ascertained.  QTD is informed and believes and based thereon alleges, that each of the fictitiously named defendants participated in and are in some manner responsible for the acts described in this Complaint and the damage resulting therefrom.

14.     QTD is informed and believes and based thereon alleges, that each of the defendants named herein as Does 1 through 50, inclusive, performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged hereinbelow, and are liable to QTD for the damages and relief sought herein.

15.     QTD is informed and believes and based thereon alleges, that in performing the acts and omissions alleged herein, and at all times relevant hereto, each of the defendants was the agent and employee of each of the other defendants and was at all times acting within the course and scope of such agency and employment with the knowledge and approval of each of the other defendants.

## THE BUSINESSES OF QTD AND CNM

16.     QTD is the developer, owner and seller of certain proprietary devices consisting of, among other things, rope tie-downs used for securing loose articles

and for use in construction (collectively the "Tie-Downs" or "Products").  As only one example, QTD manufactures 3/8 inch and ¼ inch Tie-Downs that are used for securing heavy items that might shift during transport, for securing items that might be placed in the back of a pick-up truck or for items that might be placed on flatbed trucks.  The Tie-Downs can also be used for securing items such as motorcycles and other equipment that might be placed in the back of a truck or other vehicle. Examples of the Tie-Downs are attached hereto as Exhibit 1 and are incorporated herein by reference as though set forth in full.

17.    QTD sells the Products under the registered trademark "Quickie" and refers to the Products in its advertising, sales brochures and all other marketing materials as "Quickie Tie-Downs."  Although QTD sells the Products through a small in-house sales staff, until recently the majority of the Products have been sold through QTD's manufacturers representatives who are spread throughout the country.  QTD sells its Products to the United States military and to large retailers such as Wal-Mart and Tru-Value hardware stores.

18.    QTD is informed and believes and based thereon alleges, that CNM sells its own tie-down products, referred to as the "Rope Ratchet."  Examples of the Rope Ratchet are attached hereto as Exhibit 2 and are incorporated herein by reference as though set forth in full.

19.    QTD considers CNM to be one of its competitors and is informed and believes and based thereon alleges, that CNM sells or attempts to sell its Rope

Ratchet to many of the same customers with whom QTD does business or with whom QTD seeks to do business.  QTD is informed and believes and based thereon alleges, that like QTD, CNM sells the majority of its Rope Ratchets through a network of independent sales representatives spread throughout the United States.

## THE PRIOR ACTION

20.     Since at least 1996, Southard and CNM have been engaged in an active and aggressive campaign to ruin QTD's business through any means necessary, and without regard to whether the conduct is lawful or appropriate.  Attached here as Exhibit 3 and incorporated herein by reference as though set forth in full are true and correct copies of various letters that CNM has sent beginning in 1997 that falsely allege that CNM had filed litigation against QTD for "patent infringement" when, in fact, no litigation had ever been filed.

21.     Finally, on or about August 5, 1999, CNM filed an action in the United States District Court for the Middle District of North Carolina entitled *Carolina North Manufacturing, Inc. v. Quickie Tie-Down Enterprises, Inc., et al.*, Case No. 99-CV-00652-JAB (the "Prior Action") alleging, among other things, patent infringement.

22.     On or about May 18, 2000 the Court in the Prior Action entered an Order granting CNM's motion for a preliminary injunction, which enjoined Defendants, including QTD, from "manufacturing, distributing, or offering for sale the Quickie Tie-Down" (the "Initial Order").  A true and correct copy of the Initial

1   Order is attached hereto as Exhibit 4 and is incorporated herein by reference as

2   though set forth in full.

3

4        23.     Subsequently, QTD's counsel in the Prior Action filed a motion for

5   clarification of the Initial Order, which culminated in the Court's entry of a

6   modified preliminary injunction on or about July 17, 2000 (the "Final Order").  A

7   true and correct copy of the Final Order is attached hereto as Exhibit 5 and is

8

9   incorporated herein by reference as though set forth in full.

10       24.     The Final Order **significantly narrowed** the scope of the Initial Order

11

12  by stating that "Defendants [including QTD] are enjoined from manufacturing,

13  selling, distributing or offering for sale any Quickie Tie-Down Enterprises, Inc.

14  product **incorporating a secondary ridge as set forth in Claim 1 of [CNM]**

15

16  **United States Patent 5,722,640**." [Emphasis added.]

17       25.     QTD's counsel in the Prior Action then circulated a letter stating that

18

19  QTD did **not** manufacture and did **not** sell a product incorporating a "secondary

20  ridge" and that **no** QTD product was subject to the Final Order.  A true and correct

21  copy of this letter is attached hereto as Exhibit 6 and is incorporated herein by

22

23  reference as though set forth in full.

24       26.     CNM, QTD and the other parties in the Prior Action eventually

25  reached a mutually satisfactory resolution of the Prior Action in December 2000.

26

27  The Prior Action was dismissed in February 2001 with no determinations made as

28  to the validity or invalidity of any patents held by CNM or QTD.

27.     Almost immediately after the dismissal of the Prior Action, CNM once again embarked on misguided campaign to damage QTD and its business.  Attached hereto as Exhibit 7, and incorporated herein by references as though set forth in full, are examples of letters, postings on CNM's Internet web site and other documents generated by CNM that falsely state that CNM achieved "victory" in the Prior Action and that QTD was "prohibited by the court from doing any business."  CNM also stated that it intended to drive QTD out of business and that QTD was "infringing" on CNM's patents.  These documents were sent to QTD's existing and potential customers, as well as QTD's sales representatives

28.     To carry out this campaign, CNM falsely and deceptively used the Initial Order, **not** the much narrower Final Order, to claim that QTD could not lawfully sell its Products, that QTD was in contempt of court and that QTD was in violation of a court order.  These allegations were patently false and Defendants knew the statements were false.  Defendants made the statements for the sole purpose of damaging QTD, its business relationships, its reputation in the industry and its goodwill.

## QTD'S NEW RELATIONSHIP WITH USA PRODUCTS

29.     After several years of relative calm, CNM has yet again embarked on a crusade to destroy QTD's business, including QTD's new relationship with one of the nation's largest manufacturers and sellers of tie-down devices, USA Products Group, Inc. ("USA Products").

30.     On or about August 15, 2005, QTD and USA Products entered into a license agreement (the "Agreement") pursuant to which QTD licensed to USA Products the right to sell certain of QTD's patented Products in exchange for the payment of royalties to QTD at rates specified in the Agreement.  This Agreement has the potential to be very lucrative for QTD over the next several years and represents a significant portion of QTD's new business plan for the immediate future.

31.     Pursuant to the Agreement, USA Products is on the verge of a major roll out of QTD's Products under the brand name "Pro-Grip" that is set to take place in February 2006.

## CNM'S INTERFERENCE WITH QTD'S RELATIONSHIP WITH USA PRODUCTS AT A RECENT TRADE SHOW

32.     CNM's latest efforts to damage QTD and its business relationships were carefully timed to get the largest audience possible and to coincide with the November 2005 SEMA trade show ("SEMA") in Las Vegas, Nevada.  SEMA is considered the premier automotive specialty performance products trade event in the world.  Defendants' efforts also were specifically timed to interfere with USA Product's impending roll out of the "Pro-Grip" and Quickie brand Tie-Downs.

33.     USA Products spent approximately $150,000 to be an exhibitor at SEMA and to purchase booth space.  Among the items contained in the USA Products booth were QTD's Products and Tie-Downs.

34.    Taking his personal vendetta against QTD to new heights, QTD is informed and believes and based thereon alleges, that Southard and other CNM representatives personally confronted SEMA trade show officials, presented them with the false and misleading Initial Order which Defendants represented prevented QTD from selling **any** of its Products and demanded that the QTD Products be removed from the trade show floor.  All of these actions were taken by Southard and the CNM representatives in the midst of the crowded floor of the trade show and in full view of the trade show attendees, many of whom were sales representatives or prospective and current customers of QTD.

35.    Without the benefit of the Final Order that would have exposed Southard's blatant misrepresentations, SEMA officials complied with Southard's demands.  Southard's unlawful and wrongful actions caused considerable embarrassment to USA Products and considerable damage to QTD's reputation and goodwill, to QTD's business relationships with its sales representatives and existing and potential customers, including USA Products.

36.    To add insult to injury, CNM has enlisted the help of its attorneys in CNM's campaign of misinformation.  On or about November 14, 2005, in the aftermath of the SEMA trade show humiliation, CNM's counsel sent what can only be charitably described as a "cease and desist" letter to USA Products.  A true and correct copy of this letter is attached hereto as Exhibit 8 and is incorporated herein by reference as though set forth in full.

37. The letter is signed by same attorney who represented CNM in the Prior Action and who presumably is well-aware of the existence, and more importantly, the contents of, the Final Order. Although the letter purports to enclose various CNM patents, conspicuously absent from the letter is any mention of, let alone support for, a contention that USA Products is somehow infringing these patents. This letter is nothing more than the latest strong-arm tactic that CNM has orchestrated in its never-ending effort to interfere with and damage to QTD's business and its relationships with its customers.

38. QTD is informed and believes and based thereon alleges, that since November 2005, CNM and Southard, either directly or indirectly through CNM's sales representatives, have continued to send written documents and make oral statements to QTD's potential and existing customers and to QTD's sales representatives falsely accusing QTD of violating a court order in the Prior Action and infringing on CNM's patents.

39. As a direct and proximate result of the wrongful conduct of CNM and Southard as alleged herein, QTD has suffered a precipitous drop in business, lost customers, lost many of its independent sales representatives, lost profits, suffered a loss of goodwill, suffered damage to its reputation and suffered other compensatory and consequential damages in the amount of at least $500,000 to be proven at trial.

· · ·

# FIRST CLAIM FOR RELIEF

## (Unfair Competition – 15 U.S.C. § 1125(a))

### (Against All Defendants)

40.    QTD realleges each and every allegation set forth in paragraphs 1 through 39, inclusive, and incorporates them herein by this reference as though set forth in full.

41.    This claim for relief arises under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).  This Court has subject matter jurisdiction under 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1332 and 1338.

42.    The foregoing activities of Defendants, namely use, distribution and false and deceptive representation of the outcome of the Prior Action, and the false and deceptive representation of the Initial Order, constitute false or misleading description of fact and false or misleading representation of fact as to QTD's Products, which is likely to cause confusion, mistake or deception as to the source or origin of Defendants' Rope Ratchet within the meaning of Section 43(a) of The Lanham Act, 15 U.S.C. §1125.

43.    Furthermore, the activities of Defendants, namely use, distribution and false and deceptive representation of the outcome of the Prior Action, and the false and deceptive representation of the Initial Order, constitute false or misleading description of fact and false or misleading representation of fact as to QTD's Products, constitutes commercial advertising or promotion that misrepresents the

nature, characteristics and qualities of QTD's Products.

44.     Defendants are aware of the enormous goodwill, reputation and value represented and symbolized by the QTD's Products.

45.     Defendants, with knowledge of the goodwill, reputation and value represented and symbolized by QTD's Products, continued to knowingly mislead the consuming public through the statements and conduct alleged herein.

46.     QTD is informed and believes and based thereon alleges, that Defendants' conduct has caused actual confusion or deception among members of the purchasing public who were prospective purchasers of QTD's Products.

47.     Based on the conduct of Defendants, QTD is entitled to an award of treble damages for the Defendants' willful acts under 15 U.S.C. § 1117.

48.     Defendants' conduct is wrongful, malicious, fraudulent, deliberate, willful and intentional, thereby making this case exceptional, and QTD is, therefore, entitled to recover costs of this action and attorneys' fees under 15 U.S.C. § 1117.

49.     As a further proximate result of Defendants' unfair competition, QTD has suffered and will suffer immediate and irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Defendants.  QTD is informed and believes, and thereon alleges that unless restrained by this Court, Defendants will continue the acts herein complained of.

. . .

## SECOND CLAIM FOR RELIEF

### (False Advertising – 15 U.S.C. § 1125(a)(1))

### (Against All Defendants)

50.     QTD realleges each and every allegation set forth in paragraphs 1 through 49, inclusive, and incorporates them herein by this reference as though set forth in full.

51.     This claim for relief arises under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).  This Court has subject matter jurisdiction under 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1332 and 1338.

52.     The foregoing activities of Defendants, namely use, distribution and false and deceptive representation of the outcome of the Prior Action, and the false and deceptive representation of the Initial Order, constitute false or misleading advertising within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. §1125.

53.     Defendants are aware of the enormous goodwill, reputation and value represented and symbolized by the Plaintiffs' Products.

54.     Defendants, with knowledge of the goodwill, reputation and value represented and symbolized by QTD's Products, continued to knowingly mislead the consuming public through the statements and conduct alleged herein.

55.     QTD is informed and believes and based thereon alleges, that Defendants' acts have caused actual confusion or deception among members of the

1    purchasing public who were prospective purchasers of QTD's Products.

2    56.    Based on the conduct of Defendants, QTD is also entitled to an award
3
4    of treble damages for the Defendants' willful acts under 15 U.S.C. § 1117.

5    57.    Defendants' conduct is wrongful, malicious, fraudulent, deliberate,
6
7    willful and intentional, thereby making this case exceptional, and QTD is, therefore,
8    entitled to recover costs of this action and attorneys' fees under 15 U.S.C. § 1117.

9    58.    As a further proximate result of Defendants' unfair competition, QTD
10
11   has suffered and will suffer immediate and irreparable injury not compensable by
12   money damages, such that a preliminary and permanent injunction should issue
13   against Defendants.  QTD is informed and believes, and thereon alleges that unless
14
15   restrained by this Court, Defendants will continue the acts herein complained of.

16                    **THIRD CLAIM FOR RELIEF**

17                         **(Trade Libel)**

18
19                    **(Against All Defendants)**

20   59.    QTD realleges each and every allegation set forth in paragraphs 1
21   through 58, inclusive, and incorporates them herein by this reference as though set
22
23   forth in full.

24   60.    At all relevant times, QTD has been the owner and seller of the
25   Products and the Tie-Downs.

26   61.    Commencing in November 2005 at the latest, Defendants, without
27
28   justification and without privilege, published or communicated, or caused to be

published or communicated, to third persons various oral and written statements disparaging the Products, including without limitation, the false allegation that QTD is prohibited from selling the Products because the Products infringe CNM's "patent" on the Rope Ratchet.

62.    Defendants' statements were made of and concerning QTD's above-described Products and were so understood by those who read or heard the statements, including without limitation Steve Jackson and Mike Wilcox of USA Products.

63.    Defendants' statements disparaged QTD's above-described Products in that Defendants' statements falsely alleged that QTD is prohibited from selling the Products because the Products infringe CNM's "patent" on the Rope Ratchet. Defendants' statements were false and Defendants knew the statements were false or made the statements with reckless disregard of the falsity of the statements.

64.    As a direct and proximate result of the acts and conduct of Defendants, QTD has suffered and will continue to suffer general and special damages, including lost profits, in the amount of at least $500,000 to be proven at trial.

65.    As a further proximate result of Defendants' unfair competition, QTD has suffered and will suffer immediate and irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Defendants.  QTD is informed and believes, and thereon alleges that unless restrained by this Court, Defendants will continue the acts herein complained of.

66.     QTD is informed and believes and based thereon alleges that Defendants have engaged in the conduct alleged herein with a conscious disregard of QTD's rights, and with an intent to vex, injure or annoy such as to constitute oppression, fraud or malice, thereby entitling QTD to punitive damages in amount appropriate to punish or to make an example of Defendants.

## FOURTH CLAIM FOR RELIEF

### (Defamation)

### (Against All Defendants)

67.     QTD realleges each and every allegation set forth in paragraphs 1 through 66, inclusive, and incorporates them herein by this reference as though set forth in full.

68.     Commencing in November 2005 at the latest, Defendants, without justification and without privilege, published or communicated, or caused to be published or communicated, to third persons various oral and written statements containing the false allegation that QTD is prohibited from selling the Products because the Products infringe CNM's "patent" on the Rope Ratchet.  These written communications include Defendants' publication of the Initial Order.  QTD is informed and believes and based thereon alleges, that Defendants published other written communications containing similarly false allegations concerning QTD's Products.

· · ·

69.     Defendants' written and oral statements were made of and concerning QTD and were so understood by those who read or heard the written or oral statements.

70.     The written and oral statements of Defendants are false as they pertain to QTD.

71.     The written and oral statements of Defendants are libelous on their face and slanderous per se because they clearly expose QTD to hatred, ridicule, contempt and obloquy because they allege that QTD is forbidden from selling its Products and that QTD's sale of its Products infringes CNM's patent and constitutes a "violation" of the Initial Order.

72.     These written and oral statements were seen, read and heard by third persons who reside in and around the area of QTD's principal place of business and in and around the areas in which QTD sells the Products, including without limitation Steve Jackson and Mike Wilcox of USA Products.

73.     As a direct and proximate result of the acts and conduct of Defendants, QTD has suffered and will continue to suffer general and special damages, including lost profits, in the amount of at least $500,000 to be proven at trial.

74.     QTD is informed and believes and based thereon alleges that Defendants have engaged in the conduct alleged herein with a conscious disregard of QTD's rights, and with an intent to vex, injure or annoy such as to constitute oppression, fraud or malice, thereby entitling QTD to punitive damages in amount

appropriate to punish or to make an example of Defendants.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference With Prospective Economic Advantage)

### (Against All Defendants)

75.     QTD realleges each and every allegation set forth in paragraphs 1 through 74, inclusive, and incorporates them herein by this reference as though set forth in full.

76.     At the time of Defendants' conduct, as alleged above, QTD had, and QTD now has, existing relationships with sales representatives and with existing and potential customers, including without limitation, USA Products, all of which had and have a substantial probability of resulting in economic benefit to QTD. Defendants were aware of these relationships, and of the probable potential economic advantage to QTD.

77.     The wrongful acts and conduct of Defendants as alleged above were designed to interfere, and did interfere, with such relationships, thereby causing QTD to lose the economic advantages to which it was entitled.  It is extremely likely that these relationships would have resulted in significant economic advantage to QTD had Defendants not improperly interfered with them.

78.     As a direct and proximate result of the acts and conduct of Defendants, QTD has suffered and will continue to suffer general and special damages, including lost profits, in the amount of at least $500,000 to be proven at trial.

79.    As a further proximate result of Defendants' unfair competition, QTD has suffered and will suffer immediate and irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Defendants.  QTD is informed and believes, and thereon alleges that unless restrained by this Court, Defendants will continue the acts herein complained of.

80.    QTD is informed and believes and based thereon alleges that Defendants have engaged in the conduct alleged herein with a conscious disregard of QTD's rights, and with an intent to vex, injure or annoy such as to constitute oppression, fraud or malice, thereby entitling QTD to punitive damages in amount appropriate to punish or to make an example of Defendants.

## SIXTH CLAIM FOR RELIEF

### (Inducing Breach of Contract)

### (Against All Defendants)

81.    QTD realleges each and every allegation set forth in paragraphs 1 through 80, inclusive, and incorporates them herein by this reference as though set forth in full.

82.    At the time of Defendants' conduct, as alleged above, QTD had, and QTD now has, existing relationships contracts with sales representatives and with existing customers, including without limitation, USA Products, all of which had and have a substantial probability of resulting in economic benefit to QTD. Defendants were aware of these relationships, and of the probable potential

1    economic advantage to QTD.

2        83.    The wrongful acts and conduct of Defendants as alleged above were

3
4    designed to interfere, and did interfere, with such relationships, thereby causing

5    QTD to lose the economic advantages to which it was entitled.  It is extremely

6
7    likely that these relationships would have resulted in significant economic

8    advantage to QTD had Defendants not improperly interfered with them.

9        84.    As a direct and proximate result of the acts and conduct of Defendants,

10   QTD has suffered and will continue to suffer general and special damages,

11
12   including lost profits, in the amount of at least $500,000 to be proven at trial.

13       85.    As a further proximate result of Defendants' unfair competition, QTD

14
15   has suffered and will suffer immediate and irreparable injury not compensable by

16   money damages, such that a preliminary and permanent injunction should issue

17   against Defendants.  QTD is informed and believes, and thereon alleges that unless

18
19   restrained by this Court, Defendants will continue the acts herein complained of.

20       86.    QTD is informed and believes and based thereon alleges that

21   Defendants have engaged in the conduct alleged herein with a conscious disregard

22
23   of QTD's rights, and with an intent to vex, injure or annoy such as to constitute

24   oppression, fraud or malice, thereby entitling QTD to punitive damages in amount

25   appropriate to punish or to make an example of Defendants.

26

27

28   • • •

Rutan & Tucker LLP
attorneys at law

# SEVENTH CLAIM FOR RELIEF

## (Common Law Unfair Competition)

## (Against All Defendants)

87.    QTD realleges each and every allegation set forth in paragraphs 1 through 86, inclusive, and incorporates them herein by this reference as though set forth in full.

88.    The foregoing acts and conduct of Defendants constitute unfair business practices and unfair competition under Arizona common law.

89.    As a direct and proximate result of the acts and conduct of Defendants, QTD has suffered and will continue to suffer general and special damages, including lost profits, in the amount of at least $500,000 to be proven at trial.

90.    As a further proximate result of Defendants' unfair competition, QTD has suffered and will suffer immediate and irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Defendants.  QTD is informed and believes, and thereon alleges that unless restrained by this Court, Defendants will continue the acts herein complained of.

91.    QTD is informed and believes and based thereon alleges that Defendants have engaged in the conduct alleged herein with a conscious disregard of QTD's rights, and with an intent to vex, injure or annoy such as to constitute oppression, fraud or malice, thereby entitling QTD to punitive damages in amount appropriate to punish or to make an example of Defendants.

## EIGHTH CLAIM FOR RELIEF

### (Abuse of Process)

### (Against All Defendants)

92.     QTD realleges each and every allegation set forth in paragraphs 1 through 91, inclusive, and incorporates them herein by this reference as though set forth in full.

93.     Commencing in November 2005 at the latest, Defendants obtained and used the Initial Order against QTD.

94.     Defendants misused the Initial Order by falsely representing the Initial Order as the Final Order, thereby misleading others into believing that QTD was prohibited from selling any of its Products because those Products allegedly infringed the patents of Defendants.  This use of the Initial Order was not authorized in the regular course of the Prior Action.

95.     The ulterior purpose and motivation of Defendants in so misusing the process in the above-described manner was to obtain the following collateral advantage over QTD:  to damage QTD's reputation and good will, to interfere with QTD's relationships with its sales representatives and current and potential customers, and to coerce third parties into refraining from purchasing QTD's Products by threatening those third parties with a lawsuit if they purchased QTD's Products.

· · ·

1   96.     As a direct and proximate result of the acts and conduct of Defendants,
2
3   QTD has suffered and will continue to suffer general and special damages,
4   including lost profits, in the amount of at least $500,000 to be proven at trial.

5   97.     As a further proximate result of Defendants' unfair competition, QTD
6
7   has suffered and will suffer immediate and irreparable injury not compensable by
8   money damages, such that a preliminary and permanent injunction should issue
9   against Defendants.  QTD is informed and believes, and thereon alleges that unless
10  restrained by this Court, Defendants will continue the acts herein complained of.
11
12  98.     QTD is informed and believes and based thereon alleges that
13  Defendants have engaged in the conduct alleged herein with a conscious disregard
14  of QTD's rights, and with an intent to vex, injure or annoy such as to constitute
15
16  oppression, fraud or malice, thereby entitling QTD to punitive damages in amount
17  appropriate to punish or to make an example of Defendants.
18
19                         **PRAYER FOR RELIEF**
20      **WHEREFORE,** QTD prays for judgment against Defendants, and each of
21  them, as follows:
22
23  1.     That Defendants, their officers, directors, agents, servants, employees,
24  attorneys and all persons, firms and corporations in active concert or participation
25  with them or any of them, preliminarily and permanently enjoined and restrained
26
27  from:  (a) engaging in the acts of false or misleading advertising and unfair
28  competition alleged herein, or any other acts that violate 15 U.S.C. § 1125(a); (b)

interfering with QTD's relationships with its independent sales representatives, its prospective customers or its existing customers, including without limitation USA Products; (c) misrepresenting the outcome of the Prior Action; (d) holding out the Initial Order as the Final Order of the court in the Prior Action; and (e) that Defendants be ordered to implement corrective advertising or other appropriate notice procedures to notify consumers, QTD prospective or existing customers or QTD's independent sales representatives of the proper outcome of the Prior Action and the terms of the Final Order;

2.      That QTD has and recovers from Defendants reasonable attorneys' fees, costs and disbursements relating to this action and this dispute pursuant to statutory law and otherwise;

3.      That the Court grant QTD restitution from Defendants by disgorgement of all profits earned through Defendants unlawful conduct;

4.      That Defendants pay compensatory and consequential damages according to proof at trial in the amount of at least $500,000;

5.      That Defendants pay punitive damages to QTD;

6.      That Defendants pay treble damages to QTD pursuant to 15 U.S.C. § 1117;

7.      That any monetary award include pre- and post-judgment interest at the highest rate allowed by applicable law; and

. . .

8.     For such other and further relief against Defendants as the Court may deem just and proper.

Dated:  February 15, 2006                    STEVEN L. EVANS, PLC


                                             By: /s/ Steven L. Evans
                                                 Steven L. Evans
                                                 Attorneys for Plaintiff QUICKIE TIE-
                                                 DOWN ENTERPRISES, INC., a
                                                 Texas corporation

                                             RUTAN & TUCKER, LLP
                                             Ronald P. Oines
                                             Dan E. Chambers
                                             Alejandro S. Angulo

1

### DEMAND FOR JURY TRIAL

2          Pursuant to Federal Rule of Civil Procedure 38, QTD hereby demands a jury

3    trial in this action with respect to all claims that are triable by jury.

4

5    Dated:  February 15, 2006                    STEVEN L. EVANS, PLC

6

7                                                By: /s/ Steven L. Evans

8                                                    Steven L. Evans
                                                     Attorneys for Plaintiff QUICKIE TIE-
                                                     DOWN ENTERPRISES, INC., a
9                                                    Texas corporation

10

11                                               RUTAN & TUCKER, LLP
                                                 Ronald P. Oines
                                                 Dan E. Chambers
12                                               Alejandro S. Angulo

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28