1   Steven L. Evans (State Bar No. 012998)
    LAW OFFICES OF STEVEN L. EVANS, PLC
2   322 W. Roosevelt Street
    Phoenix, AZ 85003-1325
3   Telephone: 602-288-3325
    Facsimile: 602-288-3328
4

5   Ronald P. Oines (State Bar No. 145016) (*pro hac vice*)
    Dan E. Chambers (State Bar No. 156853) (*pro hac vice*)
6   Alejandro S. Angulo (State Bar No. 217823) (*pro hac vice*)
    RUTAN & TUCKER, LLP
7   611 Anton Boulevard, Fourteenth Floor
    Costa Mesa, California 92626-1931
8   Telephone: 714-641-5100
    Facsimile: 714-546-9035
9
    Attorneys for Plaintiff QUICKIE TIE-DOWN
10  ENTERPRISES, INC., a Texas corporation

11              UNITED STATES DISTRICT COURT

12                 DISTRICT OF ARIZONA

13

14  QUICKIE TIE-DOWN ENTERPRISES,      Case No. 06-CV-00493-SMM
    INC., a Texas corporation,
15                                     **FIRST AMENDED**
                 Plaintiffs,           **COMPLAINT FOR:**
16
           vs.                         1.  **UNFAIR COMPETITION (15
17                                         U.S.C. § 1125(a));**
    CAROLINA NORTH                     2.  **FALSE ADVERTISING (15 U.S.C.**
18  MANUFACTURING, INC., a North           **§ 1125(a));**
    Carolina corporation; KENT        3.  **TRADE LIBEL;**
19  SOUTHARD, an individual; and DOES 4.  **DEFAMATION;**
    1 through 50, inclusive,          5.  **INTENTIONAL INTERFERENCE**
20                                         **WITH PROSPECTIVE**
                 Defendants.              **ECONOMIC ADVANTAGE;**
21                                     6.  **INDUCING BREACH OF**
                                           **CONTRACT;**
22                                     7.  **COMMON LAW UNFAIR**
                                           **COMPETITION; and**
23                                     8.  **ABUSE OF PROCESS**
24                                     **DEMAND FOR JURY TRIAL**
25

26

27        Plaintiff QUICKIE TIE-DOWN ENTERPRISES, INC.  ("QTD"), for its First

28  Amended Complaint against Defendants CAROLINA NORTH

1  MANUFACTURING, INC. ("CNM") and KENT SOUTHARD ("Southard") and

2  DOES 1 through 50, inclusive (collectively "Defendants"), alleges as follows:

3  **INTRODUCTION**

4  1.  This action arises out of Defendants' despicable "win at all costs"

5  attitude that reflects an unfortunate and all too common example of bullying

6  business tactics, including the use of false information, deception,

7  misrepresentations and concerted efforts to unlawfully interfere with QTD's

8  customers and relationships.  In fact, Defendants' efforts to destroy QTD have been

9  ongoing for nearly a decade, stretching back to 1996, when Defendants first raised

10  frivolous issues of "patent infringement" against QTD.

11  2.  Despite their best efforts, Defendants have been unable to shut down

12  QTD.  While QTD has, for the most part, been willing to ignore Defendants'

13  malicious conduct and fight it out in the marketplace, Defendants' latest antics have

14  served as the last straw.  Through this action, QTD seeks to recover the damage it

15  has suffered as a result of Defendants' most recent efforts to topple QTD.

16  Defendants' efforts have undoubtedly been born out of their frustration at not being

17  able to drive QTD out of business.

18  **JURISDICTION AND VENUE**

19  3.  This is a civil action that arises in part under the Lanham Act

20  (Trademark Act of 1946 as amended), 15 U.S.C. §§1051 *et seq*., for unfair

21  competition and false advertising, and under the laws of the State of Arizona.

22  4.  Jurisdiction over this matter is conferred on the Court by 28 U.S.C.

23  §§ 1331, 1332, 1338, and 15 U.S.C. §1121.  Pursuant to 28 U.S.C. § 1367, this

24  Court has supplemental jurisdiction over the claims not brought under a federal

25  statute because those claims are related to, and form part of the same case or

26  controversy as, the federal question claims.

27  5.  The Court has personal jurisdiction over Defendants by virtue of their

28  presence in this judicial district, and because, among other things, the activities

Rutan & Tucker LLP
attorneys at law

FIRST AMENDED COMPLAINT

2186/023397-0002
682352.02 a06/06/06                    -1-

1 complained of herein have occurred and are occurring in part in this judicial district

2 and Defendants conduct business in this judicial district.

3    6.    In addition, all Defendants are subject to the personal jurisdiction of

4 this Court because, among other things, a substantial part of the events giving rise to

5 this action occurred in the State of Arizona.

6    7.    In addition, all Defendants are subject to the personal jurisdiction of

7 this Court because, among other things, QTD is informed and believes and based

8 thereon alleges, that Defendants are subject to Arizona's long-arm statute.

9    8.    In addition, Defendants are subject to the personal jurisdiction of this

10 Court because, among other things, QTD is informed and believes and based

11 thereon alleges, that Defendants have transacted and are presently transacting

12 business in the State of Arizona by: (a) providing Internet users in Arizona access

13 to Defendants' web sties; (b) contracting with, or attempting to contract with,

14 Arizona residents for the sale of goods and services, including the goods described

15 herein, on its Internet web sties; (c) selling or attempting to sell goods and services

16 to residents of the State of Arizona; and (d) committing the tortious or otherwise

17 wrongful acts alleged herein in the State of Arizona.

18    9.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because

19 QTD resides in this district, a substantial part of the events or omissions giving rise

20 to the claims alleged herein occurred in this district and the Defendants are subject

21 to personal jurisdiction and may be found in this district.

22                              **THE PARTIES**

23    10.    QTD is a corporation duly organized and existing under the laws of the

24 State of Texas, with its principal place of business located in Mesa, Arizona, at 663

25 W. 2nd Avenue, #19.

26    11.    QTD is informed and believes and based thereon alleges, that CNM is

27 a corporation duly organized and existing under the laws of the State of North

28 Carolina, with its principal place of business located in Kernersville, North Carolina

1   at 1325 South Park Drive.

2       12.   QTD is informed and believes and based thereon alleges, that Southard
3   is an individual residing in the State of North Carolina.

4       13.   The true names and capacities, whether individual, corporate, associate
5   or otherwise, of defendants DOES 1 through 50, inclusive, are unknown to QTD,
6   which therefore sues said defendants by such fictitious names. QTD will seek leave
7   of this Court to amend this Complaint to include their proper names and capacities
8   when they have been ascertained. QTD is informed and believes and based thereon
9   alleges, that each of the fictitiously named defendants participated in and are in
10   some manner responsible for the acts described in this Complaint and the damage
11   resulting therefrom.

12       14.   QTD is informed and believes and based thereon alleges, that each of
13   the defendants named herein as Does 1 through 50, inclusive, performed,
14   participated in, or abetted in some manner, the acts alleged herein, proximately
15   caused the damages alleged hereinbelow, and are liable to QTD for the damages
16   and relief sought herein.

17       15.   QTD is informed and believes and based thereon alleges, that in
18   performing the acts and omissions alleged herein, and at all times relevant hereto,
19   each of the defendants was the agent and employee of each of the other defendants
20   and was at all times acting within the course and scope of such agency and
21   employment with the knowledge and approval of each of the other defendants.

22                **THE BUSINESSES OF QTD AND CNM**

23       16.   QTD is the developer, owner and seller of certain proprietary devices
24   consisting of, among other things, rope tie-downs used for securing loose articles
25   and for use in construction (collectively the "Tie-Downs" or "Products"). As only
26   one example, QTD manufactures 3/8 inch and ¼ inch Tie-Downs that are used for
27   securing heavy items that might shift during transport, for securing items that might
28   be placed in the back of a pick-up truck or for items that might be placed on flatbed

1  trucks.  The Tie-Downs can also be used for securing items such as motorcycles and
2  other equipment that might be placed in the back of a truck or other vehicle.
3  Examples of the Tie-Downs are attached hereto as Exhibit 1 and are incorporated
4  herein by reference as though set forth in full.

5      17.    QTD sells the Products under the registered trademark "Quickie" and
6  refers to the Products in its advertising, sales brochures and all other marketing
7  materials as "Quickie Tie-Downs."  Although QTD sells the Products through a
8  small in-house sales staff, until recently the majority of the Products have been sold
9  through QTD's manufacturers representatives who are spread throughout the
10  country.  QTD sells its Products to the United States military and to large retailers
11  such as Wal-Mart and Tru-Value hardware stores.

12      18.    QTD is informed and believes and based thereon alleges, that CNM
13  sells its own tie-down products, referred to as the "Rope Ratchet."  Examples of the
14  Rope Ratchet are attached hereto as Exhibit 2 and are incorporated herein by
15  reference as though set forth in full.

16      19.    QTD considers CNM to be one of its competitors and is informed and
17  believes and based thereon alleges, that CNM sells or attempts to sell its Rope
18  Ratchet to many of the same customers with whom QTD does business or with
19  whom QTD seeks to do business.  QTD is informed and believes and based thereon
20  alleges, that like QTD, CNM sells the majority of its Rope Ratchets through a
21  network of independent sales representatives spread throughout the United States.

22                          **THE PRIOR ACTION**

23      20.    Since at least 1996, Southard and CNM have been engaged in an active
24  and aggressive campaign to ruin QTD's business through any means necessary, and
25  without regard to whether the conduct is lawful or appropriate.  Attached here as
26  Exhibit 3 and incorporated herein by reference as though set forth in full are true
27  and correct copies of various letters that CNM has sent beginning in 1997 that
28  falsely allege that CNM had filed litigation against QTD for "patent infringement"

Rutan & Tucker LLP
attorneys at law

FIRST AMENDED COMPLAINT

2186/023397-0002
682352.02 a06/06/06                    -4-

1  when, in fact, no litigation had ever been filed.

2  21.  Finally, on or about August 5, 1999, CNM filed an action in the United
3  States District Court for the Middle District of North Carolina entitled *Carolina*
4  *North Manufacturing, Inc. v. Quickie Tie-Down Enterprises, Inc., et al.*, Case No.
5  99-CV-00652-JAB (the "Prior Action") alleging, among other things, patent
6  infringement.

7  22.  On or about May 18, 2000 the Court in the Prior Action entered an
8  Order granting CNM's motion for a preliminary injunction, which enjoined
9  Defendants, including QTD, from "manufacturing, distributing, or offering for sale
10  the Quickie Tie-Down" (the "Initial Order").  A true and correct copy of the Initial
11  Order is attached hereto as Exhibit 4 and is incorporated herein by reference as
12  though set forth in full.

13  23.  Subsequently, QTD's counsel in the Prior Action filed a motion for
14  clarification of the Initial Order, which culminated in the Court's entry of a
15  modified preliminary injunction on or about July 17, 2000 (the "Final Order").  A
16  true and correct copy of the Final Order is attached hereto as Exhibit 5 and is
17  incorporated herein by reference as though set forth in full.

18  24.  The Final Order **significantly narrowed** the scope of the Initial Order
19  by stating that "Defendants [including QTD] are enjoined from manufacturing,
20  selling, distributing or offering for sale any Quickie Tie-Down Enterprises, Inc.
21  product **incorporating a secondary ridge as set forth in Claim 1 of [CNM]**
22  **United States Patent 5,722,640**." [Emphasis added.]

23  25.  QTD's counsel in the Prior Action then circulated a letter stating that
24  QTD did **not** manufacture and did **not** sell a product incorporating a "secondary
25  ridge" and that **no** QTD product was subject to the Final Order.  A true and correct
26  copy of this letter is attached hereto as Exhibit 6 and is incorporated herein by
27  reference as though set forth in full.

28  26.  CNM, QTD and the other parties in the Prior Action eventually

1  reached a mutually satisfactory resolution of the Prior Action in December 2000.
2  The Prior Action was dismissed in February 2001 with no determinations made as
3  to the validity or invalidity of any patents held by CNM or QTD.

4      27.    Almost immediately after the dismissal of the Prior Action, CNM once
5  again embarked on misguided campaign to damage QTD and its business.  Attached
6  hereto as Exhibit 7, and incorporated herein by references as though set forth in full,
7  are examples of letters, postings on CNM's Internet web site and other documents
8  generated by CNM that falsely state that CNM achieved "victory" in the Prior
9  Action and that QTD was "prohibited by the court from doing any business."  CNM
10  also stated that it intended to drive QTD out of business and that QTD was
11  "infringing" on CNM's patents.  These documents were sent to QTD's existing and
12  potential customers, as well as QTD's sales representatives

13      28.    To carry out this campaign, CNM falsely and deceptively used the
14  Initial Order, **not** the much narrower Final Order, to claim that QTD could not
15  lawfully sell its Products, that QTD was in contempt of court and that QTD was in
16  violation of a court order.  These allegations were patently false and Defendants
17  knew the statements were false.  Defendants made the statements for the sole
18  purpose of damaging QTD, its business relationships, its reputation in the industry
19  and its goodwill.

20          **QTD'S NEW RELATIONSHIP WITH USA PRODUCTS**

21      29.    After several years of relative calm, CNM has yet again embarked on a
22  crusade to destroy QTD's business, including QTD's new relationship with one of
23  the nation's largest manufacturers and sellers of tie-down devices, USA Products
24  Group, Inc. ("USA Products").

25      30.    On or about August 15, 2005, QTD and USA Products entered into a
26  license agreement (the "Agreement") pursuant to which QTD licensed to USA
27  Products the right to sell certain of QTD's patented Products in exchange for the
28  payment of royalties to QTD at rates specified in the Agreement.  This Agreement

1  has the potential to be very lucrative for QTD over the next several years and

2  represents a significant portion of QTD's new business plan for the immediate

3  future.

4      31.    Pursuant to the Agreement, USA Products conducted a major roll out

5  of QTD's Products under the brand name "Pro-Grip" in February 2006.

## CNM'S INTERFERENCE WITH QTD'S RELATIONSHIP WITH USA PRODUCTS AT A RECENT TRADE SHOW

8      32.    CNM's latest efforts to damage QTD and its business relationships

9  were carefully timed to get the largest audience possible and to coincide with the

10 November 2005 SEMA trade show ("SEMA") in Las Vegas, Nevada.  SEMA is

11 considered the premier automotive specialty performance products trade event in

12 the world.  Defendants' efforts also were specifically timed to interfere with USA

13 Product's impending roll out of the "Pro-Grip"  and Quickie brand Tie-Downs.

14     33.    USA Products spent approximately $150,000 to be an exhibitor at

15 SEMA and to purchase booth space.  Among the items contained in the USA

16 Products booth were QTD's Products and Tie-Downs.

17     34.    Taking his personal vendetta against QTD to new heights, on

18 November 2, 2005 at approximately 10:30 a.m., Southard and perhaps other CNM

19 representatives personally confronted SEMA trade show officials, presented them

20 with the false and misleading Initial Order which Defendants represented prevented

21 QTD from selling **any** of its Products and demanded that the QTD Products be

22 removed from the trade show floor.  Those present during this confrontation

23 include, without limitation, William Glasco, Jr., the son of the owner of the SEMA

24 trade show, Mark Fleischaker, Esq., general counsel for the SEMA trade show,

25 Steve Jackson of USA Products, Mike Wilcox of USA Products and possibly Ray

26 Brown of USA Products.

27     35.    All of these actions were taken by Southard and possibly other CNM

28 representatives in the midst of the crowded floor of the trade show and in full view

Rutan & Tucker LLP
attorneys at law

FIRST AMENDED COMPLAINT

2186/023397-0002
682352.02 a06/06/06                                    -7-

1 of the trade show attendees, many of whom were sales representatives or
2 prospective and current customers of QTD.

3      36.    Without the benefit of the Final Order that would have exposed
4 Southard's blatant misrepresentations, SEMA officials complied with Southard's
5 demands.  Southard's unlawful and wrongful actions caused considerable
6 embarrassment to USA Products and considerable damage to QTD's reputation and
7 goodwill, to QTD's business relationships with its sales representatives and existing
8 and potential customers, including USA Products.

9      37.    To add insult to injury, CNM has enlisted the help of its attorneys in
10 CNM's campaign of misinformation.  On or about November 14, 2005, in the
11 aftermath of the SEMA trade show humiliation, CNM's counsel sent what can only
12 be charitably described as a "cease and desist" letter to USA Products.  A true and
13 correct copy of this letter is attached hereto as Exhibit 8 and is incorporated herein
14 by reference as though set forth in full.

15      38.    The letter is signed by same attorney who represented CNM in the
16 Prior Action and who presumably is well-aware of the existence, and more
17 importantly, the contents of, the Final Order.  Although the letter purports to
18 enclose various CNM patents, conspicuously absent from the letter is any mention
19 of, let alone support for, a contention that USA Products is somehow infringing
20 these patents.  This letter is nothing more than the latest strong-arm tactic that CNM
21 has orchestrated in its never-ending effort to interfere with and damage to QTD's
22 business and its relationships with its customers.

23      39.    QTD is informed and believes and based thereon alleges, that since
24 November 2005, CNM and Southard, either directly or indirectly through CNM's
25 sales representatives, have continued to send written documents and make oral
26 statements to QTD's potential and existing customers and to QTD's sales
27 representatives falsely accusing QTD of violating a court order in the Prior Action
28 and infringing on CNM's patents.

1  40.  As a direct and proximate result of the wrongful conduct of CNM and
2  Southard as alleged herein, QTD has suffered a precipitous drop in business, lost
3  customers, lost many of its independent sales representatives, lost profits, suffered a
4  loss of goodwill, suffered damage to its reputation and suffered other compensatory
5  and consequential damages in the amount of at least $500,000 to be proven at trial.

6  ## FIRST CLAIM FOR RELIEF

7  ### (Unfair Competition – 15 U.S.C. § 1125(a))

8  ### (Against All Defendants)

9  41.  QTD realleges each and every allegation set forth in paragraphs 1
10  through 40, inclusive, and incorporates them herein by this reference as though set
11  forth in full.

12  42.  This claim for relief arises under Section 43(a) of the Lanham Act, 15
13  U.S.C. §1125(a).  This Court has subject matter jurisdiction under 15 U.S.C. §1121
14  and 28 U.S.C. §§1331, 1332 and 1338.

15  43.  The foregoing activities of Defendants, namely use, distribution and
16  false and deceptive representation of the outcome of the Prior Action, and the false
17  and deceptive representation of the Initial Order, constitute false or misleading
18  description of fact and false or misleading representation of fact as to QTD's
19  Products, which is likely to cause confusion, mistake or deception as to the source
20  or origin of Defendants' Rope Ratchet within the meaning of Section 43(a) of The
21  Lanham Act, 15 U.S.C. §1125.  Defendants' wrongful conduct commenced on or
22  about November 2, 2005.

23  44.  Furthermore, the activities of Defendants, namely use, distribution and
24  false and deceptive representation of the outcome of the Prior Action, and the false
25  and deceptive representation of the Initial Order, constitute false or misleading
26  description of fact and false or misleading representation of fact as to QTD's
27  Products, constitutes commercial advertising or promotion that misrepresents the
28  nature, characteristics and qualities of QTD's Products.

1    45.    Defendants are aware of the enormous goodwill, reputation and value

2    represented and symbolized by the QTD's Products.

3    46.    Defendants, with knowledge of the goodwill, reputation and value

4    represented and symbolized by QTD's Products, continued to knowingly mislead

5    the consuming public through the statements and conduct alleged herein.

6    47.    QTD is informed and believes and based thereon alleges, that

7    Defendants' conduct has caused actual confusion or deception among members of

8    the purchasing public who were prospective purchasers of QTD's Products.

9    48.    Based on the conduct of Defendants, QTD is entitled to an award of

10   treble damages for the Defendants' willful acts under 15 U.S.C. § 1117.

11   49.    Defendants' conduct is wrongful, malicious, fraudulent, deliberate,

12   willful and intentional, thereby making this case exceptional, and QTD is, therefore,

13   entitled to recover costs of this action and attorneys' fees under 15 U.S.C. § 1117.

14   50.    As a further proximate result of Defendants' unfair competition, QTD

15   has suffered and will suffer immediate and irreparable injury not compensable by

16   money damages, such that a preliminary and permanent injunction should issue

17   against Defendants.  QTD is informed and believes, and thereon alleges that unless

18   restrained by this Court, Defendants will continue the acts herein complained of.

19   **SECOND CLAIM FOR RELIEF**

20   **(False Advertising – 15 U.S.C. § 1125(a)(1))**

21   **(Against All Defendants)**

22   51.    QTD realleges each and every allegation set forth in paragraphs 1

23   through 40, inclusive, and incorporates them herein by this reference as though set

24   forth in full.

25   52.    This claim for relief arises under Section 43(a) of the Lanham Act, 15

26   U.S.C. §1125(a).  This Court has subject matter jurisdiction under 15 U.S.C. §1121

27   and 28 U.S.C. §§1331, 1332 and 1338.

28   53.    The foregoing activities of Defendants, namely use, distribution and

1 || false and deceptive representation of the outcome of the Prior Action, and the false

2 || and deceptive representation of the Initial Order, constitute false or misleading

3 || advertising within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C.

4 || §1125.  Defendants' wrongful conduct commenced on or about November 2, 2005.

5     54.   Defendants are aware of the enormous goodwill, reputation and value

6 || represented and symbolized by the Plaintiffs' Products.

7     55.   Defendants, with knowledge of the goodwill, reputation and value

8 || represented and symbolized by QTD's Products, continued to knowingly mislead

9 || the consuming public through the statements and conduct alleged herein.

10     56.   QTD is informed and believes and based thereon alleges, that

11 || Defendants' acts have caused actual confusion or deception among members of the

12 || purchasing public who were prospective purchasers of QTD's Products.

13     57.   Based on the conduct of Defendants, QTD is also entitled to an award

14 || of treble damages for the Defendants' willful acts under 15 U.S.C. § 1117.

15     58.   Defendants' conduct is wrongful, malicious, fraudulent, deliberate,

16 || willful and intentional, thereby making this case exceptional, and QTD is, therefore,

17 || entitled to recover costs of this action and attorneys' fees under 15 U.S.C. § 1117.

18     59.   As a further proximate result of Defendants' unfair competition, QTD

19 || has suffered and will suffer immediate and irreparable injury not compensable by

20 || money damages, such that a preliminary and permanent injunction should issue

21 || against Defendants.  QTD is informed and believes, and thereon alleges that unless

22 || restrained by this Court, Defendants will continue the acts herein complained of.

23                     **THIRD CLAIM FOR RELIEF**

24                          **(Trade Libel)**

25                    **(Against All Defendants)**

26     60.   QTD realleges each and every allegation set forth in paragraphs 1

27 || through 40, inclusive, and incorporates them herein by this reference as though set

28 || forth in full.

61. At all relevant times, QTD has been the owner and seller of the Products and the Tie-Downs.

62. Commencing on or about November 2, 2005, Defendants, without justification and without privilege, published or communicated, or caused to be published or communicated, to third persons various oral and written statements disparaging the Products, including without limitation, the false allegation that QTD is prohibited from selling the Products because the Products infringe CNM's "patent" on the Rope Ratchet.

63. Defendants' statements were made of and concerning QTD's above-described Products and were so understood by those who read or heard the statements, including without limitation Steve Jackson and Mike Wilcox of USA Products.

64. Defendants' statements disparaged QTD's above-described Products in that Defendants' statements falsely alleged that QTD is prohibited from selling the Products because the Products infringe CNM's "patent" on the Rope Ratchet. Defendants' statements were false and Defendants knew the statements were false or made the statements with reckless disregard of the falsity of the statements.

65. As a direct and proximate result of the acts and conduct of Defendants, QTD has suffered and will continue to suffer general and special damages, including lost profits, in the amount of at least $500,000 to be proven at trial.

66. As a further proximate result of Defendants' unfair competition, QTD has suffered and will suffer immediate and irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Defendants. QTD is informed and believes, and thereon alleges that unless restrained by this Court, Defendants will continue the acts herein complained of.

67. QTD is informed and believes and based thereon alleges that Defendants have engaged in the conduct alleged herein with a conscious disregard of QTD's rights, and with an intent to vex, injure or annoy such as to constitute

1 oppression, fraud or malice, thereby entitling QTD to punitive damages in amount
2 appropriate to punish or to make an example of Defendants.

3 ## FOURTH CLAIM FOR RELIEF

4 ### (Defamation)

5 ### (Against All Defendants)

6      68.      QTD realleges each and every allegation set forth in paragraphs 1
7 through 40, inclusive, and incorporates them herein by this reference as though set
8 forth in full.

9      69.      Commencing on or about November 2, 2005, Defendants, without
10 justification and without privilege, published or communicated, or caused to be
11 published or communicated, to third persons various oral and written statements
12 containing the false allegation that QTD is prohibited from selling the Products
13 because the Products infringe CNM's "patent" on the Rope Ratchet. These written
14 communications include Defendants' publication of the Initial Order. QTD is
15 informed and believes and based thereon alleges, that Defendants published other
16 written communications containing similarly false allegations concerning QTD's
17 Products.

18      70.      Defendants' written and oral statements were made of and concerning
19 QTD and were so understood by those who read or heard the written or oral
20 statements.

21      71.      The written and oral statements of Defendants are false as they pertain
22 to QTD.

23      72.      The written and oral statements of Defendants are libelous on their face
24 and slanderous per se because they clearly expose QTD to hatred, ridicule,
25 contempt and obloquy because they allege that QTD is forbidden from selling its
26 Products and that QTD's sale of its Products infringes CNM's patent and constitutes
27 a "violation" of the Initial Order.

28      73.      These written and oral statements were seen, read and heard by third

1   persons who reside in and around the area of QTD's principal place of business and

2   in and around the areas in which QTD sells the Products, including without

3   limitation Steve Jackson and Mike Wilcox of USA Products.

4        74.     As a direct and proximate result of the acts and conduct of Defendants,

5   QTD has suffered and will continue to suffer general and special damages,

6   including lost profits, in the amount of at least $500,000 to be proven at trial.

7        75.     QTD is informed and believes and based thereon alleges that

8   Defendants have engaged in the conduct alleged herein with a conscious disregard

9   of QTD's rights, and with an intent to vex, injure or annoy such as to constitute

10  oppression, fraud or malice, thereby entitling QTD to punitive damages in amount

11  appropriate to punish or to make an example of Defendants.

12                          **FIFTH CLAIM FOR RELIEF**

13          **(Intentional Interference With Prospective Economic Advantage)**

14                            **(Against All Defendants)**

15       76.     QTD realleges each and every allegation set forth in paragraphs 1

16  through 40, inclusive, and incorporates them herein by this reference as though set

17  forth in full.

18       77.     At the time of Defendants' conduct, as alleged herein, commencing on

19  or about November 2, 2005, QTD had, and QTD now has, existing relationships

20  with sales representatives and with existing and potential customers, including

21  without limitation, USA Products, all of which had and have a substantial

22  probability of resulting in economic benefit to QTD.  Defendants were aware of

23  these relationships, and of the probable potential economic advantage to QTD.

24       78.     The wrongful acts and conduct of Defendants as alleged above were

25  designed to interfere, and did interfere, with such relationships, thereby causing

26  QTD to lose the economic advantages to which it was entitled.  It is extremely

27  likely that these relationships would have resulted in significant economic

28  advantage to QTD had Defendants not improperly interfered with them.

1    79.    As a direct and proximate result of the acts and conduct of Defendants,

2    QTD has suffered and will continue to suffer general and special damages,

3    including lost profits, in the amount of at least $500,000 to be proven at trial.

4    80.    As a further proximate result of Defendants' unfair competition, QTD

5    has suffered and will suffer immediate and irreparable injury not compensable by

6    money damages, such that a preliminary and permanent injunction should issue

7    against Defendants. QTD is informed and believes, and thereon alleges that unless

8    restrained by this Court, Defendants will continue the acts herein complained of.

9    81.    QTD is informed and believes and based thereon alleges that

10   Defendants have engaged in the conduct alleged herein with a conscious disregard

11   of QTD's rights, and with an intent to vex, injure or annoy such as to constitute

12   oppression, fraud or malice, thereby entitling QTD to punitive damages in amount

13   appropriate to punish or to make an example of Defendants.

14                          **SIXTH CLAIM FOR RELIEF**

15                          **(Inducing Breach of Contract)**

16                          **(Against All Defendants)**

17   82.    QTD realleges each and every allegation set forth in paragraphs 1

18   through 40, inclusive, and incorporates them herein by this reference as though set

19   forth in full.

20   83.    At the time of Defendants' conduct, as alleged above, commencing on

21   or about November 2, 2005, QTD had, and QTD now has, existing relationships

22   contracts with sales representatives and with existing customers, including without

23   limitation, USA Products, all of which had and have a substantial probability of

24   resulting in economic benefit to QTD. Defendants were aware of these

25   relationships, and of the probable potential economic advantage to QTD.

26   84.    The wrongful acts and conduct of Defendants as alleged above were

27   designed to interfere, and did interfere, with such relationships, thereby causing

28   QTD to lose the economic advantages to which it was entitled. It is extremely

1 likely that these relationships would have resulted in significant economic

2 advantage to QTD had Defendants not improperly interfered with them.

3   85.   As a direct and proximate result of the acts and conduct of Defendants,

4 QTD has suffered and will continue to suffer general and special damages,

5 including lost profits, in the amount of at least $500,000 to be proven at trial.

6   86.   As a further proximate result of Defendants' unfair competition, QTD

7 has suffered and will suffer immediate and irreparable injury not compensable by

8 money damages, such that a preliminary and permanent injunction should issue

9 against Defendants.  QTD is informed and believes, and thereon alleges that unless

10 restrained by this Court, Defendants will continue the acts herein complained of.

11   87.   QTD is informed and believes and based thereon alleges that

12 Defendants have engaged in the conduct alleged herein with a conscious disregard

13 of QTD's rights, and with an intent to vex, injure or annoy such as to constitute

14 oppression, fraud or malice, thereby entitling QTD to punitive damages in amount

15 appropriate to punish or to make an example of Defendants.

16 ## SEVENTH CLAIM FOR RELIEF

17 ### (Common Law Unfair Competition)

18 ### (Against All Defendants)

19   88.   QTD realleges each and every allegation set forth in paragraphs 1

20 through 40, inclusive, and incorporates them herein by this reference as though set

21 forth in full.

22   89.   The foregoing acts and conduct of Defendants constitute unfair

23 business practices and unfair competition under Arizona common law.  Defendants'

24 wrongful conduct commenced on or about November 2, 2005.

25   90.   As a direct and proximate result of the acts and conduct of Defendants,

26 QTD has suffered and will continue to suffer general and special damages,

27 including lost profits, in the amount of at least $500,000 to be proven at trial.

28   91.   As a further proximate result of Defendants' unfair competition, QTD

1  has suffered and will suffer immediate and irreparable injury not compensable by

2  money damages, such that a preliminary and permanent injunction should issue

3  against Defendants. QTD is informed and believes, and thereon alleges that unless

4  restrained by this Court, Defendants will continue the acts herein complained of.

5      92.    QTD is informed and believes and based thereon alleges that

6  Defendants have engaged in the conduct alleged herein with a conscious disregard

7  of QTD's rights, and with an intent to vex, injure or annoy such as to constitute

8  oppression, fraud or malice, thereby entitling QTD to punitive damages in amount

9  appropriate to punish or to make an example of Defendants.

10                     **EIGHTH CLAIM FOR RELIEF**

11                           **(Abuse of Process)**

12                        **(Against All Defendants)**

13     93.    QTD realleges each and every allegation set forth in paragraphs 1

14  through 40, inclusive, and incorporates them herein by this reference as though set

15  forth in full.

16     94.    Commencing on or about November 2, 2005, Defendants obtained and

17  used the Initial Order against QTD.

18     95.    Defendants misused the Initial Order by falsely representing the Initial

19  Order as the Final Order, thereby misleading others into believing that QTD was

20  prohibited from selling any of its Products because those Products allegedly

21  infringed the patents of Defendants. This use of the Initial Order was not authorized

22  in the regular course of the Prior Action.

23     96.    The ulterior purpose and motivation of Defendants in so misusing the

24  process in the above-described manner was to obtain the following collateral

25  advantage over QTD: to damage QTD's reputation and good will, to interfere with

26  QTD's relationships with its sales representatives and current and potential

27  customers, and to coerce third parties into refraining from purchasing QTD's

28  Products by threatening those third parties with a lawsuit if they purchased QTD's

1  Products.

2      97.     As a direct and proximate result of the acts and conduct of Defendants,
3  QTD has suffered and will continue to suffer general and special damages,
4  including lost profits, in the amount of at least $500,000 to be proven at trial.

5      98.     As a further proximate result of Defendants' unfair competition, QTD
6  has suffered and will suffer immediate and irreparable injury not compensable by
7  money damages, such that a preliminary and permanent injunction should issue
8  against Defendants.  QTD is informed and believes, and thereon alleges that unless
9  restrained by this Court, Defendants will continue the acts herein complained of.

10     99.     QTD is informed and believes and based thereon alleges that
11 Defendants have engaged in the conduct alleged herein with a conscious disregard
12 of QTD's rights, and with an intent to vex, injure or annoy such as to constitute
13 oppression, fraud or malice, thereby entitling QTD to punitive damages in amount
14 appropriate to punish or to make an example of Defendants.

15                          **PRAYER FOR RELIEF**

16     **WHEREFORE,** QTD prays for judgment against Defendants, and each of
17 them, as follows:

18     1.     That Defendants, their officers, directors, agents, servants, employees,
19 attorneys and all persons, firms and corporations in active concert or participation
20 with them or any of them, preliminarily and permanently enjoined and restrained
21 from:  (a) engaging in the acts of false or misleading advertising and unfair
22 competition alleged herein, or any other acts that violate 15 U.S.C. § 1125(a); (b)
23 interfering with QTD's relationships with its independent sales representatives, its
24 prospective customers or its existing customers, including without limitation USA
25 Products; (c) misrepresenting the outcome of the Prior Action; (d) holding out the
26 Initial Order as the Final Order of the court in the Prior Action; and (e) that
27 Defendants be ordered to implement corrective advertising or other appropriate
28 notice procedures to notify consumers, QTD prospective or existing customers or

1  QTD's independent sales representatives of the proper outcome of the Prior Action
2  and the terms of the Final Order;

3      2.      That QTD has and recovers from Defendants reasonable attorneys'
4  fees, costs and disbursements relating to this action and this dispute pursuant to
5  statutory law and otherwise;

6      3.      That the Court grant QTD restitution from Defendants by
7  disgorgement of all profits earned through Defendants unlawful conduct;

8      4.      That Defendants pay compensatory and consequential damages
9  according to proof at trial in the amount of at least $500,000;

10     5.      That Defendants pay punitive damages to QTD;

11     6.      That Defendants pay treble damages to QTD pursuant to 15 U.S.C. §
12  1117;

13     7.      That any monetary award include pre- and post-judgment interest at the
14  highest rate allowed by applicable law; and

15     8.      For such other and further relief against Defendants as the Court may
16  deem just and proper.

17

18  Dated:  June 6, 2006                    RUTAN & TUCKER, LLP
                                           Ronald P. Oines
19  ·                                      Dan E. Chambers
                                           Alejandro S. Angulo
20

21                                         By:/s/
22                                           Dan E. Chambers
                                             Attorneys for Plaintiff QUICKIE TIE-
23                                           DOWN ENTERPRISES, INC., a
                                             Texas corporation
24

25                                         LAW OFFICES OF STEVEN L. EVANS,
                                           PLC
26
                                           Steven L. Evans
27

28

1

## DEMAND FOR JURY TRIAL

2      Pursuant to Federal Rule of Civil Procedure 38, QTD hereby demands a jury

3   trial in this action with respect to all claims that are triable by jury.

4

5   Dated:  June 6, 2006                    RUTAN & TUCKER, LLP
                                            Ronald P. Oines
6                                           Dan E. Chambers
                                            Alejandro S. Angulo
7

8                                           By:/s/

9                                              Dan E. Chambers
                                            Attorneys for Plaintiff QUICKIE TIE-
10                                          DOWN ENTERPRISES, INC., a
                                            Texas corporation
11

12                                          LAW OFFICES OF STEVEN L. EVANS,
                                            PLC
13
                                            Steven L. Evans
14
   COPY of the foregoing electronically filed
15  this 6th day of June, 2006, with the Clerk of the Court:

16  Sandra Day O'Connor U.S. Courthouse
    401 W. Washington St., Ste. 130, SPC 1
17  Phoenix, Arizona 85003-2118

18  COPY of the foregoing mailed this
    6th day of June, 2006, to the following:
19
    Sid A. Horowitz, Esq.
20  Carmichael & Powell, P.C.
    7301 N. 16th St., Ste. 103
21  Phoenix, AZ  85020-5297

22

23

24

25

26

27

28

Rutan & Tucker LLP
attorneys at law